UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MARK FREITAS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 15-cv-13493-ADB |
| | * | |
| JPMORGAN CHASE BANK, N.A., | * | |
| | * | |
| Defendant. | * | |
| | * | |

## **MEMORANDUM AND ORDER ON SUMMARY JUDGMENT MOTIONS**

BURROUGHS, D.J.

      Plaintiff Mark Freitas owned a property on Nantucket and fell behind on his mortgage payments for the property. He contends that he and Defendant JPMorgan Chase Bank ("Chase") formed an oral contract whereby Chase would accept a deed in lieu of foreclosure, and in return, forgive any outstanding debt. Freitas asserts that Chase breached this agreement and, in response, has brought this action for breach of contract and associated claims. Now before the Court are the parties' cross-motions for summary judgment. [ECF Nos. 48, 54]. For the reasons set forth below, the Court grants Chase's motion for summary judgment and denies Freitas's motion.

**I.    BACKGROUND**[1]

      Plaintiff Mark Freitas is a businessman who lives in Florida. In 2005, he purchased a property located at 24 Pocomo Road, Nantucket, Massachusetts for $9 million, which he used as a vacation rental and not as a personal residence. In 2007, Freitas refinanced the property with a loan from Chase for $9.45 million at a 6.125% interest rate. In 2010, he refinanced the loan with

---

[1] The following facts are drawn from the parties' statements of undisputed material facts [ECF Nos. 52, 56] unless otherwise noted.

Chase again, in the same amount, at a 5.375% interest rate. He refinanced with Chase for the same amount again in 2012 at a 3.125% interest rate.

Freitas lost his job in 2009 and began having difficulty making payments on the mortgage. In June 2010, he and Chase entered a forbearance agreement under which Chase agreed to refrain from foreclosing on the property in exchange for Freitas reaffirming the loan and making other payments. The forbearance agreement allowed Freitas to refinance in 2010 and 2012, as described above. Freitas defaulted on the loan in December 2013. Chase proposed allowing Freitas to conduct a short sale of the property, on the condition that Freitas pay Chase an additional $3 million cash contribution. Freitas submitted a bid to conduct a short sale of the property, but he ultimately declined to do so.

On December 30, 2014, Julio Alejo, a mortgage banker working for Chase, called Freitas.[2] Alejo introduced himself and stated that he was from Chase's "deed in lieu department" and that the reason for his call was "to see if for a possible deed in lieu option for the property." [ECF No. 51-2 at 2]. After a brief discussion of the prior short sale attempt, Alejo went on to explain the deed in lieu process:

> Basically what I'd like to do is see if we can go ahead and eliminate your current mortgage debt as well as taking care of this within a 30 to 90 day process. Basically, that's what a deed in lieu is, we don't have to have the property listed any longer and we try to go ahead and eliminate this debt within 30 to 90 days.

Id. at 2–3. After Freitas asked how the process worked, Alejo responded:

> [H]ow that works is that we'll just get a request from you stating that you want to go ahead and go through the deed in lieu and from there the file will be assigned to a negotiator and we're going to go out there and inspect the property, make sure everything good. Also make sure… We're going to order title, make sure there's no other liens on the property and when that comes out and everything's good to go then Chase's attorneys will draw up documents. Those documents are basically stating that you're relinquishing the debt over to Chase, you're basically… You're signing over a deed back to the bank.

---

[2] Chase recorded the phone call, and Freitas filed a transcript of the call. [ECF No. 51-2].

Id. at 3. Freitas then asked what would happen to him after he signed over the deed and the house, and Alejo answered, "There's no… The deficiency will be waived from Chase. You won't owe nothing to Chase, of course, and it will be negatively impacting your credit . . . ." Id. Freitas then stated, "[o]kay that sounds great, that sounds good on my end. So just let me know, sir, what I need to do or do I just wait to hear back from you?" Id. To which Alejo responded, "[t]he only thing that we'll need right now is having a letter, signed from you," stating "that you want to go through the deed in lieu." Id.

Alejo provided Freitas with a number to which he could fax the letter, and then Freitas asked, "[j]ust say I want to proceed with the deed in lieu?" Id. at 4. Alejo responded, "[t]hat is correct." Id. Alejo then mentioned that Chase also needed a copy of a listing agreement showing that the house was listed for at least 120 days, which Freitas confirmed he could provide. Id. Near the conclusion of the conversation, Alejo told Freitas that "[y]ou should be receiving a call from the negotiator at least five business days and then they'll be able to proceed forward." Id. at 5. Freitas responded, "[g]reat, I appreciate it so much, thank you sir." Id.

Later the same day, Freitas faxed a letter to Chase which stated:

Please let this serve as confirmation that I am accepting the deed in lieu for my property at 24 Pocomo Road, Nantucket, MA 02554-4238.

Per our discussion, upon JPMorgan Chase's acceptance of the deed in lieu of foreclosure on this property, the referenced loan will be deemed to be fully satisfied, and I shall have no further obligations in respect of such loan for unpaid interest, unpaid principal, fees or otherwise.

Finally, I have attached the last listing brokerage agreement on the property.

[ECF No. 50-7].

At some point after Freitas' conversation with Alejo, he received a call from another Chase representative. The representative informed Freitas that Chase would only allow him to go

3

through the deed in lieu process if he agreed to make a $3 million cash contribution, which Freitas declined to do. Chase filed a copy of a letter from Chase to Freitas dated January 9, 2015 [ECF No. 57-10], which Freitas contends he never received. The letter states that Freitas's request for a deed in lieu of foreclosure was denied because he "advised [Chase] that you are unable to make the cash contribution required as a condition" of the deed in lieu of foreclosure.

Chase conducted a foreclosure sale of the property on July 30, 2015. Chase claims that the sale resulted in a shortfall of approximately $4.4 million, a deficiency that it now seeks to recover from Freitas.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The Court must view "the facts in the light most agreeable to the nonmoving party and draw all reasonable inferences in that party's favor." Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011). "An issue is 'genuine' if the evidence of record permits a rational factfinder to resolve it in favor of either party," and a "fact is 'material' if its existence or nonexistence has the potential to change the outcome of the suit." Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4–5 (1st Cir. 2010). The substantive law determines which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id.; see also Commodity Futures Trading Comm'n v. JBW Capital, 812 F.3d 98, 110 n.19 (1st Cir. 2016) (quoting Anderson).

4

### B. Whether the Parties Formed a Contract

Freitas asserts that, through his conversation with Alejo and the letter he sent the same day, he and Chase formed a binding contract in which Chase would accept a deed in lieu of foreclosure and, in return, Chase would forgive all outstanding debt. Chase argues that the parties did not have a contract.

"It is well established in Massachusetts that the essential elements of a contract are an offer, acceptance, and an exchange of consideration or meeting of the minds." Vadnais v. NSK Steering Sys. Am., Inc., 675 F. Supp. 2d 205, 207 (D. Mass. 2009) (citing Quinn v. State Ethics Comm'n, 516 N.E.2d 124, 127 (Mass. 1987) and Northrup v. Brigham, 826 N.E.2d 239, 243 (Mass. App. Ct. 2005)). "An offer is the manifestation of willingness to enter into a bargain made in such a way as to justify the other person in understanding that his assent will conclude the agreement." I & R Mech., Inc. v. Hazelton Mfg. Co., 817 N.E.2d 799, 802 (Mass. App. Ct. 2004). "An offer ripens into a binding contract when it is accepted. Acceptance occurs when the offeree gives the return requested in the offer." Id. "The parties must give their mutual assent by having 'a meeting of the minds' on the same proposition on the same terms at the same time." Id. "It is axiomatic that to create an enforceable contract, there must be agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement." Situation Mgmt. Sys., Inc. v. Malouf, Inc., 724 N.E.2d 699, 703 (Mass. 2000). While "[i]t is not required that all terms of the agreement be precisely specified," the parties must have "progressed beyond the stage of 'imperfect negotiation.'" Id. (quoting Lafayette Place Assocs. v. Boston Redevelopment Auth., 694 N.E.2d 820, 826 (Mass. 1998)). In addition, "[w]hen 'parties contemplate the execution of a final written agreement,' a strong inference is made that they 'do not intend to be bound by earlier negotiations or agreements until

5

the final terms are settled.'" Mass Cash Register, Inc. v. Comtrex Sys. Corp., 901 F. Supp. 404, 415 (D. Mass. 1995) (quoting Rosenfield v. U. S. Tr. Co., 195 N.E. 323, 325 (Mass. 1935)); see also Goren v. Royal Investments Inc., 516 N.E.2d 173, 175 (Mass. App. Ct. 1987) ("language looking to execution of a final written agreement justifies a strong inference that significant items on the agenda of the transaction are still open and, hence, that the parties do not intend to be bound").

The conversation between Freitas and Alejo, and the subsequent letter sent by Freitas, was not sufficient to form a contract. Instead, all that occurred was that Alejo described the deed in lieu process and tried to gauge Freitas's interest, and Freitas responded positively. During the call, Alejo used language such as "we *try* to go ahead and eliminate this debt," he described the reason for his call as "a *possible* deed in lieu option," and near the end of the conversation, he stated that Freitas would receive a call from a negotiator to "proceed forward." [ECF No. 51-2 at 2, 3, 5] (emphasis added). Alejo described the process as one in which Freitas would make a request, the file would be assigned to a negotiator, Chase would do due diligence, and ultimately its attorneys would "draw up documents." Id. at 2. This indicates that an expression of interest from Freitas was the first step, but not sufficient in and of itself to constitute a binding agreement. Notably, Freitas is unable to point to any definite or specific language indicating that there was a concrete offer or agreement as to the material terms. Rather, he cites to the passages in which Alejo described how the process worked, but it is not at all apparent that by describing that process, Alejo intended to make Freitas an offer "in such a way as to justify the other person in understanding that his assent will conclude the agreement." I & R Mech., Inc., 817 N.E.2d at 802.[3] Furthermore, Alejo twice explained that Freitas would have to work with a negotiator as

---

[3] Freitas emphasizes Alejo's statement that the deficiency "will" be waived, but Alejo frequently made mistakes as to verb tense and grammar during the call ("You won't owe nothing to Chase,

part of the process; if the terms were already set, it is unclear why a negotiator would be involved. Finally, the fact that Alejo informed Freitas that Chase's attorneys would put together the official paperwork at a later date suggests that the phone call and letter did not establish the final terms of a contract. See Mass Cash Register, 901 F. Supp. at 415 (statement referring to execution of final written agreement justifies "strong" inference that parties have not reached binding agreement); Goren, 516 N.E.2d at 175 (same). Ultimately, this Court cannot conclude that the parties achieved a meeting of the minds. Further, the lack of a concrete offer, the absence of clarity as to the material terms, and the hypothetical nature of the conversation indicate that Freitas and Chase did not enter into a binding contract.

### C. Remaining Counts

For the same reasons, Freitas's claim for promissory estoppel cannot survive, because Freitas could not have reasonably believed that Chase made a binding promise to forgive the entire deficiency in exchange for a deed in lieu of foreclosure. Likewise, Freitas has not shown that Alejo made a false statement or that Freitas justifiably could have relied on that statement, and thus his negligent misrepresentation claim is not viable. Lastly, because Alejo was merely attempting to determine Freitas's interest in beginning the deed in lieu process, the conversation between Alejo and Freitas did not constitute "unfair or deceptive acts or practices," and thus Freitas cannot prevail on his claim under Mass. Gen. Laws ch. 93A, § 11.

---

of course, and it will be negatively impacting your credit," "The only thing that we'll need right now is having a letter," "You should be receiving a call from the negotiator at least five business days,"), and given this issue and the context of the conversation, the Court does not agree that this statement constitutes a definite offer to forgive the entire deficiency.

## III. CONCLUSION

Accordingly, Chase's motion for summary judgment [ECF No. 54] is <u>GRANTED</u>, and Freitas's motion for summary judgment [ECF No. 48] is <u>DENIED</u>.

**SO ORDERED.**

September 15, 2017
/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE